[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT AND MOTIONTO STRIKE
On May 21, 1997, the plaintiffs, John Faillace and Kristine Faillace (the Faillaces), filed an eleven-count amended revised complaint against the defendants, Anthony J. Loschiavo and Carol A. Loschiavo (the Loschiavos), as well as Gilda Soderholm (Gilda), Jill Soderholm, Cheryl Soderholm, and Laura Soderholm (the Soderholms). The Faillaces allege the following facts in their complaint.
On or about February 3, 1995, the Faillaces purchased real property located at 528 Brookside Drive, Fairfield, Connecticut (528 Brookside), from Gilda. Prior to the closing, the Soderholms had conveyed the premises located at 544 Brookside Drive, Fairfield, Connecticut (544 Brookside), which abuts 528 Brookside, to the Loschiavos. As part of the transaction, the Soderholms had granted the Loschiavos a temporary right-of-way over a portion of 528 Brookside to use as a driveway. The use of that driveway was terminable at any time within five years upon the Soderholms installing a driveway on the Loschiavos' property. The Soderholms and the Loschiavos entered into an agreement to CT Page 10738 that effect (the agreement). (Motion for Summary Judgment: Exhibit C).
Pursuant to the agreement, the Soderholms attempted to terminate the Loschiavos' right-of-way over 528 Brookside. Permits for the construction of the driveway were obtained, and the sum of approximately $2,400 for its construction was placed in escrow. Pursuant to the agreement, the Soderholms attempted to construct the driveway but the Loschiavos refused to designate where the driveway should be placed. Subsequent to closing of title, the Faillaces took possession of 528 Brookside; however, the Loschiavos continued to use the right-of-way in violation of their agreement with the Soderholms and have refused to discontinue such use. The refusal and/or failure of the Loschiavos to discontinue use of the right-of-way constitutes breach of the agreement, to which the Faillaces are third party beneficiaries.
In count four, the Faillaces allege that Gilda covenanted and promised to hold the Faillaces harmless and to prosecute and/or defend them in the event that the Loschiavos breached the agreement (the hold harmless agreement). (Motion for Summary Judgment: Exhibit G.) The Faillaces purchased 528 Brookside in reliance on the hold harmless agreement. The refusal and/or failure of Gilda to effect Loschiavos' performance in accordance with their obligations under the agreement constitutes a violation of warranty deed covenants.
In count five, the Faillaces allege that the defendants Jill Soderholm, Laura Soderholm, and Cheryl Soderholm are the daughters of Gilda. Each daughter owned an undivided interest in 528 Brookside for many years prior to the sale of said property to the Faillaces by Gilda. The daughters owned and sold 544 Brookside to the Loschiavos in 1993. On or about November, 1994, the daughters conveyed by Quit-Claim Deed their interest in 528 Brookside to Gilda for little or no consideration. At the time of the conveyance, Gilda and the Soderholms knew, or should have known, that the sale of 528 Brookside was imminent, and that they would not be able to perform their obligations pursuant to any warranty deed delivered in such a transaction in connection with the effective termination of the right-of-way. The conveyance occurred in order to avoid and escape any liability to a bona fide good-faith purchaser of 528 Brookside arising from the breach of any warranty covenants and obligations. Gilda and/or the Soderholms participated in the transfer and/or conveyance in CT Page 10739 violation of the Uniform Fraudulent Transfer Act, General Statutes § 52-552.
In count six, the Faillaces allege that Gilda and the Soderholms knew, or should have known, that the Loschiavos would not respect and observe the property rights of the Faillaces in connection with the termination of the right-of-way over 528 Brookside when the Faillaces purchased the property and accepted the warranty deed to the same. The failure of Gilda and the Soderholms to disclose the refusal of the Loschiavos to abide by the terms of the agreement granting them the terminable right-of-way was intended to deceive the Faillaces into purchasing 528 Brookside. In count nine, the Faillaces allege that Gilda and the Soderholms knew, or should have known, that their acts or omissions would cause them great emotional distress, anguish and anxiety.
On June 18, 1997, the Soderholms moved for summary judgment on counts four, five, six, and nine of the Faillaces' complaint. Because the Soderholms are challenging the legal sufficiency of counts six and nine, the court will treat the motion for summary judgment as to these counts as a motion to strike. See Bricugliov. City of East Hartford, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 396622 (April 14, 1993; Allen, J.) (treating the defendants' motion for summary judgment as a motion to strike). The Soderholms filed a memorandum of law and other supporting documents in support of their motion. On July 1, 1997, the Faillaces filed an objection to the Soderholms' motion. The Faillaces also submitted a memorandum of law in support of their objection as well as other supporting documents.
I. Motion for Summary Judgment
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Scintov. Stamm, 224 Conn. 524, 530, 620 A.2d 99, cert. denied,510 U.S. 861, 114 S.Ct 176, 126 L.Ed.2d 136 (1993). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Barrett v. Danbury Hospital,232 Conn. 242, 250, 654 A.2d 748 (1995). The standard to be applied in CT Page 10740 determining whether summary judgment should be granted "is whether the party would be entitled to a directed verdict on the same facts." Connelly v. Housing Authority, 213 Conn. 354, 364,567 A.2d 1212 (1990).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted; internal quotation marks omitted.) Connell v.Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1990). "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 579, 573 A.2d 699 (1990).
 A
Gilda moves for summary judgment as to count four, which alleges a breach of warranty deed covenants, on the ground that the use of the driveway by the Loschiavos' is unlawful and the right emanating from the agreement granting the Loschiavos a temporary right-of-way over 528 Brookside does not constitute an encumbrance against title.
"The covenant of warranty is a contract by which the grantor of land undertakes to protect the land granted from all lawfulclaims and demands existing at the time of the grant, and the contract is made not only with his immediate grantee but with whomever may become the owner of the land by a title derived through the grantee." (Emphasis added; internal quotation marks omitted.) Reed v. Stevens, 93 Conn. 659, 662, 107 A. 495 (1919);Rosenblum v. Eisenhauer, 29 Conn. Sup. 216, 221, 280 A.2d 537
(1971). See also Kratochvil v. Cox, 129 Conn. 246, 251,27 A.2d 382 (1942) ("the grantor in a warranty deed covenants that his title is good and that he will warrant and defend it against all lawful claims and demands existing at the time of the grant"). In the present case, there exists a genuine issue of fact as to whether the Loschiavos' claim as to the right-of-way is lawful.
On an earlier motion by the Faillaces for summary judgement as to count seven, alleging trespass against the Loschiavos, Judge Rush ruled that there existed a genuine issue as to whether CT Page 10741 the Loschiavos' signed the contract providing for the terminable right-of-way under duress and whether the Faillaces' had notice of such a claim when they purchased 528 Brookside. Faillace v.Soderholm, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 322547 (September 9, 1996; Rush, J.). "A contract in order to be valid must be the result of the free assent of the parties making it." McCarthy v. Taniska,84 Conn. 377, 381, 80 A. 84 (1911). "`"The making of a contract requires the free exercise of the will power of the contracting parties, and the free meeting and blending of their minds. In the absence of that, the essential of a contract is wanting; and if such absence be produced by the wrongful conduct of one party to the transaction, or conduct for which he is responsible, whereby the other party, for the time being, through fear, is bereft of his free will power, for the purpose of obtaining the contract, and it is thereby obtained, such contract may be avoided on the ground of duress."'" Bauco v. Dominello, Superior Court, judicial district of New Haven, Docket No. 333175 (May 18; Burns, J.), quoting McCarthy v. Taniska, supra, 84 Conn. 381. See also Bertiv. Northeast Savings, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 456687 (December 9, 1993; Berger, J.) ("It is undoubtedly true that a contract obtained by duress is unenforceable"). The common law definition of duress is "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition." 25 Am.Jur.2d, Duress and Undue Influence § 1 (1996). "The word duress implies feebleness on one side, overpowering strength on the other." United States v. BethlehemSteel Corp. 315 U.S. 289, 300, 62 S.Ct. 581, 86 L.Ed. 583 (1941). "If one purchases land with notice of an equitable right in a third person, equity regards him as standing, as to such person, in the place of the grantor, and as purchasing the land subject to such equitable charge, even though upon the record the title appears to be clear and the purchaser believes that no such encumbrance exists." New York, N. H. H.R. Co. v. Russell,83 Conn. 581, 594, 78 A. 324 (1910). If the agreement providing for the terminable, rather than permanent, right-of-way was invalid on the ground that the Loschiavos agreed to it under duress and the Faillaces had actual notice of this claim when they purchased 528 Brookside, then the Loschiavos might have a lawful claim as to the right-of-way.
"In essence [the law of the case principle] expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . A judge CT Page 10742 should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if the case comes before him regularly and he becomes convinced that the view of the law previously applied . . . was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Internal quotation marks omitted.) State v. Arena, 235 Conn. 67, 80,663 A.2d 972 (1995). After reviewing the affidavits and documents submitted by the Soderholms and the Faillaces, this court concludes that Judge Rush's ruling that there was a question of fact as to whether the Loschiavos had a lawful claim to the disputed right-of-way and whether the Faillaces had actual notice of such a claim when they purchased 528 Brookside is not clearly erroneous. Since there is an issue of fact as to whether the Loschiavos have a lawful claim to the right-of-way, the court should and hereby does deny Gilda's motion for summary judgment as to count four, breach of warranty deed covenants.
 B
In count five, the Faillaces allege that the Soderholms conveyed their interest in 528 Brookside to Gilda to avoid liability under warranty deed covenants, knowing that the Loschiavos' would not give up their claim to the right-of-way. The Soderholms move for summary judgment on the ground that the Faillaces are not "creditors" within the meaning of the Uniform Fraudulent Transfer Act because any claim arose after the conveyance. General Statutes §§ 52-552a et seq.
"The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . Whether the conveyance in question was fraudulent is purely a question of fact." Albuquerque v.Albuquerque, 42 Conn. App. 284, 291, 679 A.2d 962 (1996). General Statutes § 52-552b provides, in pertinent part: "(3) `Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. (4) `Creditor' means a person who has a claim." General Statutes § 52-552e(a) provides, in pertinent part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer
CT Page 10743 was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor . . . ." (Emphasis added.) "A literal reading of the definitions provided in General Statutes §§ 52-552b(3) and 52-552b(4) and the requirements set forth in General Statutes §§ 52-552e and52-552f demonstrate that the plaintiff is required to allege that he was a person who has a right to payment . . . which arosebefore the transfer was made." (Emphasis in original.) Schultz v.Direct Mail Service, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 305653 (February 1, 1996, Ballen, J.).
In the instant case, the defendant Laura Soderholm transferred her interest in 528 Brookside to Gilda on October 4, 1994. (Exhibit H-2). The defendants Jill Soderholm and Cheryl Soderholm transferred their interest in 528 Brookside to Gilda on October 21, 1994. (Exhibit H-1). It is not clear, however, when Gilda perfected her interest acquired from her daughters. General Statutes § 52-552g provides, in pertinent part: "(1) A transfer is made: (A) With respect to an asset that is real property other than a fixture, but including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee . . . ." The Soderholms have provided no evidence as to when Gilda recorded the conveyance in the land records to perfect her newly acquired interest in 528 Brookside. Until Gilda recorded the conveyance in the land records, a good faith purchaser could have acquired an interest in 528 Brookside superior to that of Gilda from the Soderholms. In his affidavit, the plaintiff, John Faillace, states that they (the Faillaces) entered into a contract of sale for 528 Brookside in the middle of November, 1994. If the Faillaces entered into the contract of sale for 528 Brookside, which gave rise to their present claim, before Gilda perfected her conveyance, the Faillaces' claim would have arisen before the alleged fraudulent transfer took place between the Soderholms and Gilda. Furthermore, there is also a genuine issue as to whether the Soderholms made the transfer with the intent to defraud the Faillaces. See General Statutes § 52-522e. A question of intent raises an issue of fact. Picataggio v. Romeo,36 Conn. App. 791, 794, 654 A.2d 382 (1995). Since there remain genuine issues as to when Gilda recorded her conveyance and the CT Page 10744 intent of the Soderholms in transferring 528 Brookside to Gilda, the granting of a summary judgment is inappropriate. Accordingly the Soderholms' motion for summary judgment as to count five is hereby denied.
II. Motion to Strike
As discussed above, the court will treat the Soderholms' motion for summary judgment as to count six, fraudulent and/or negligent misrepresentation, and count nine, intentional and/or negligent infliction of emotional distress, as motions to strike.
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). If facts provable in the complaint would support a cause of action, the motion to strike must be denied. Id., 826.
 A
With regard to count six, the Soderholms argue that the Faillaces have not alleged facts which, if proven, would show that the Soderholms made any fraudulent misrepresentations to the Faillaces in connection with the sale of 528 Brookside. The Faillaces have alleged that the Soderholms knew, but failed to disclose, the fact that the Loschiavos would not respect and observe the property rights of the Faillaces and that they (the Loschiavos) had refused to abide by the terms of the contract granting them only a terminable right-of-way.
The elements of fraudulent misrepresentation are: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false representation to her detriment.Dorsey v. Mancuso, 23 Conn. App. 629, 633, 583 A.2d 646 (1990), cert. denied, 217 Conn. 809, 585 A.2d 1234 (1991). "Usually, mere nondisclosure does not amount to fraud. . . . Nondisclosure may, however, amount to fraud when there is a failure to disclose known facts under circumstances that impose a duty to speak. . . . In addition, once a vendor undertakes to speak on a CT Page 10745 subject, the vendor must then make a full and fair disclosure as to that subject." Bernard v. Gershman, 18 Conn. App. 652, 656,559 A.2d 1171 (1989). Construing the facts in the complaint most favorably to the Faillaces, the nondisclosure alleged by the Faillaces satisfies the first two elements needed to state a claim of fraudulent misrepresentation. The Faillaces have also alleged that the Soderholms induced them into purchasing 528 Brookside by failing to disclose the true nature of the conflict over the right-of-way with the Loschiavos. Since the Faillaces have alleged that the Soderholms' actions induced them into buying 528 Brookside, the Faillaces have alleged sufficient facts to satisfy the third element of fraudulent misrepresentation. As a result of the Loschiavos' continuing use of the right-of-way, the Faillaces allege that they have not been able to peacefully possess and enjoy the premises for which they paid valuable consideration. Consequently, the Faillaces have alleged sufficient facts to satisfy the fourth element. The Faillaces have therefore alleged facts, that, if proven, would show that the Soderholms committed fraudulent misrepresentation in-connection with the sale of 528 Brookside.
 B
The Soderholms further argue that the Faillaces have failed to allege that they (the Soderholms) negligently misrepresented any facts to the Faillaces' in connection with the sale of 528 Brookside. The Connecticut Supreme Court has long recognized liability for negligent misrepresentation and has held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. Williams Ford, Inc. v. HartfordCourant Co., 232 Conn. 559, 575, 657 A.2d 212 (1995). "The governing principles are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) Id. The plaintiff is not required to plead the precise language of the Restatement to establish a claim for negligent misrepresentation, so long as the facts alleged fairly apprise the defendant of the plaintiff's intent to pursue the claim.Eremita v. Stein, Superior Court, judicial district of CT Page 10746 Hartford/New Britain at New Britain, Docket No. 463210 (November 2, 1995; Arena, J.), citing D'Ulisse-Cupo v. Board of Directorsof Notre Dame High School, 202 Conn. 206, 219-20, 520 A.2d 217
(1987). Claims for negligent misrepresentation have been brought in actions involving real estate transactions, see e.g.,McClintock v. Rivard, 219 Conn. 417, 593 A.2d 1375 (1991).Eremita v. Stein, supra, Superior Court, Docket No. 463210.
A claim of negligent misrepresentation may be based on a defendant's failure to speak when he has a duty to do so.DePasquale v. Day, Berry Howard, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 450218 (March 31, 1994; Berger, J.). A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act.Coburn v. Lenox Houses, Inc., 186 Conn. 370, 375, 441 A.2d 620
(1982). See also Williams Ford, Inc. v. Hartford Courant Co., supra, 232 Conn. 577-78 (no special relationship necessary to impose duty of care upon defendant newspaper where newspaper dealt directly with plaintiff customers). In the instant case, the Faillaces have alleged that when the Soderholms sold 528 Brookside to them (the Faillaces), the Soderholms should have known and disclosed to them that the Loschiavos would not respect and observe the Faillaces' property rights and had refused to abide by the terms of the contract granting the Loschiavos a terminable right-of-way. The Faillaces have also alleged that they relied on the Soderholms' assurances that they (the Faillaces) would enjoy peaceful possession of 528 Brookside when they purchased it. Because a claim of negligent misrepresentation may be based on a failure to disclose when one ought to know the truth and has a duty to speak, the Faillaces have indeed alleged sufficient facts that, if proven, would show that the Soderholms committed negligent misrepresentation.
 C
With regard to count nine, the Soderholms argue that the Faillaces' claim of intentional infliction of emotional distress is legally insufficient on the grounds that the alleged conduct of the Soderholms does not constitute extreme and outrageous conduct and that there is no specific allegation of any act showing an intention to cause injury. In order for the plaintiff to prevail in a claim for intentional infliction of emotional CT Page 10747 distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result from his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Drew v. K-mart Corp. , 37 conn. app. 239, 251, 655 A.2d 806 (1995). Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.
Thus, it is the intent to cause injury that is the gravamen of the tort. Id., quoting DeLaurentis v. New Haven,220 Conn. 225, 266-67, 597 A.2d 807 (1991). Here, the Faillaces have alleged that the Soderholms knew or should have known that their conduct would cause the Faillaces to suffer emotional distress, thereby satisfying the first element of intentional infliction emotional distress.
Extreme and outrageous conduct is "conduct exceeding all bounds usually tolerated by decent society . . . ." (Internal quotation marks omitted.) Peytan v. Ellis, 200 Conn. 243, 254 n. 5, 510 A.2d 1337 (1986). Whether conduct is extreme and outrageous is a question in the first instance for the court; however, where reasonable people may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. Watt v. Ford Consumer FinanceCo., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 323572 (July 31, 1996; Hauser, J.). Although the Faillaces have not specifically alleged that the conduct of the Soderholms was "extreme and outrageous," nevertheless reasonable people may differ as to whether conduct involving fraudulent conveyance and/or fraudulent misrepresentation is "extreme and outrageous." Consequently, the question of whether the conduct of the Soderholms was "extreme and outrageous" should be left to the jury.
The Faillaces have further alleged that the conduct of the Soderholms was the cause of their great emotional distress. The Faillaces have also satisfied the third and fourth elements of intentional infliction of emotional distress, which require that the emotional distress must be the result of the defendant's CT Page 10748 conduct and that the emotional distress be severe. Since the Faillaces' allegations satisfy all four elements of intentional infliction emotional distress, this count should not be stricken.
 D
With regard to plaintiff's claim of negligent infliction of emotional distress, it appears that plaintiff has combined this cause of action with that of intentional infliction of emotional distress in the same count, count nine. These being two separate causes of action, they should have been pleaded in two separate counts and for the purposes of this memorandum will be treated as two separate counts. See, Ahsan, Et Al v. Olsen, Et. Al, Hartford-New Britain JD, at Hartford, Docket No. 314430, (Wagner, J., Jan 18, 1988).
The Soderholms argue that the Faillaces' claim of negligent
infliction of emotional distress is also legally insufficient on the ground that the Faillaces have failed to allege any facts that would show that Soderholms' conduct was negligent or that they (the Soderholms) should have realized that their conduct might result in illness or bodily harm. To maintain a claim for negligent infliction of emotional distress, the plaintiff has the burden of pleading (and proving) that the defendant should have realized its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, "might result in illness or bodily harm." Morris v. HartfordCourant Co., 200 Conn. 676, 683, 513 A.2d 66 (1986). Here, the Faillaces have failed to allege that the Soderholms should have realized that their conduct might result in illness or bodily harm. Since the Faillaces have not alleged all the essential elements required to maintain an action for negligent infliction of emotional distress, this count should stricken from plaintiff's claim.
CONCLUSION
Because there remain genuine issues of material fact as to counts four and five, defendant's the motion for summary judgment addressed to these counts is hereby DENIED. Further, the Faillaces' claims of intentional/negligent misrepresentation alleged in count six and intentional infliction of emotional distress alleged in count nine are legally sufficient and therefore defendant's motion to strike is hereby DENIED. The Faillaces, however, have not alleged all the elements of CT Page 10749 negligent infliction of emotional distress, therefore defendant's motion to strike count nine is hereby GRANTED.
MELVILLE, J